# United States Court of Appeals
## For the First Circuit

No. 15-2354

JUDITH SHAULIS,

Plaintiff, Appellant,

v.

NORDSTROM, INC., d/b/a/ NORDSTROM RACK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

S. James Boumil, with whom Boumil Law Offices, Konstantine W. Kyros, and Law Offices of Konstantine W. Kyros, were on brief, for appellant.
P. Craig Cardon, with whom Dylan J. Price, Sheppard Mullin Richter & Hampton LLP, John P. Bueker, Rebecca C. Ellis, and Ropes & Gray LLP, were on brief, for appellee.

July 26, 2017

**LIPEZ**, **Circuit Judge**.  This case is about a sweater with a controversial price tag.  Appellant Judith Shaulis purchased a cardigan sweater for $49.97 at a Nordstrom Rack outlet store in Boston, Massachusetts.  The price tag attached to that sweater listed both the purchase price of $49.97 and a higher "Compare At" price of $218.  Shaulis claims that the listed "Compare At" price was deceptive.  The sweater was, she alleges, never sold by Nordstrom Rack, or any other retailer, for $218.  Instead, Shaulis claims that the "Compare At" price tags are used by Nordstrom to mislead consumers about the quality of items.  To vindicate this position, Shaulis filed suit alleging that Nordstrom had, in violation of Massachusetts statutory and common law, improperly obtained money from her and other Massachusetts consumers and requested that a court order Nordstrom to restore this money and enjoin Nordstrom from continuing to violate Massachusetts law.  The district court, in a well-reasoned opinion, granted Nordstrom's motion to dismiss all of Shaulis's claims.  We affirm.

## I. Background

The facts underlying this case are taken from the second amended complaint and are presumed true for the purpose of this appeal.  They are fully set forth in the opinion of the district court.  See Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 43-44 (D. Mass. 2015).

Defendant Nordstrom, Inc. is a Seattle, Washington-based corporation that operates department stores throughout the United States and Canada, including five "Nordstrom Rack" outlet stores in Massachusetts. Shaulis purchased a sweater at one of these stores in Boston in 2014. The price tag attached to the sweater, which included both the $49.97 purchase price and the "Compare At" price of $218, identified the difference between the two numbers as "77%" worth of savings.[1]

Shaulis claims that this price tag was deceptive. According to Shaulis, although price tags on Nordstrom Rack products contain both a sale price and a "Compare At" price that purports to represent a bona fide price at which Nordstrom (or some other retailer) formerly sold those products, Nordstrom, in reality, sells goods manufactured by designers for exclusive sale at its Nordstrom Rack stores, which means that such items were never sold -- or intended to be sold -- at the "Compare At" prices advertised on the price tags. Shaulis claims that she was wrongfully "[e]nticed by the idea of paying significantly less than the 'Compare At' price charged outside of Nordstrom Rack," and that, but for Nordstrom's deception, she never would have purchased the sweater.

---

[1] The complaint also listed a number of "typical examples" of products representing "the pricing schemes and tactics utilized by" Nordstrom. The complaint does not, however, allege that Shaulis purchased any of these items.

- 3 -

On November 6, 2014, Shaulis initiated this action with a complaint filed in the Massachusetts Superior Court. She filed an amended complaint on December 8, 2014, and a second amended complaint ("SAC") on December 24. The SAC alleged claims for fraud, breach of contract, unjust enrichment, violations of the Code of Massachusetts Regulations and the Federal Trade Commission Act,[2] and violations of Mass. Gen. Laws ch. 93A ("Chapter 93A"). The SAC was brought on behalf of herself and all those similarly situated, and proposed a class consisting of "[a]ll individuals residing in the Commonwealth of Massachusetts who, within the applicable statute of limitations preceding the filing of this action . . . , purchased Nordstrom Rack Products."

Nordstrom removed the case to federal court and successfully moved to dismiss the action for failure to state a claim. The district court held that Shaulis had failed to adequately plead a legally cognizable injury under Chapter 93A, and further denied her requests to certify several Chapter 93A questions to the Massachusetts Supreme Judicial Court ("SJC") and for leave to file a third amended complaint. The court also dismissed all of Shaulis's common law claims, again citing the failure to plead a legally cognizable injury.

---

[2] The district court dismissed Shaulis's claim for violations of the Code of Massachusetts Regulations and the Federal Trade Commission Act on the ground that neither statute provides for a private cause of action. Shaulis does not appeal this decision.

On appeal, Shaulis challenges dismissal of her Chapter 93A claim and her common law claims for fraud, breach of contract, and unjust enrichment.  Our review is de novo.  Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 291 (1st Cir. 2015). As a federal court sitting in diversity, we apply the substantive law of Massachusetts, as articulated by the SJC.  Sanders v. Phoenix Ins. Co., 843 F.3d 37, 47 (1st Cir. 2016).

## II. Chapter 93A

The bulk of Shaulis's appeal involves objections to the district court's dismissal of her Chapter 93A claim for damages and injunctive relief.[3]  Chapter 93A, commonly known as the Massachusetts Consumer Protection Act, is a broad consumer protection statute that provides a private cause of action for a consumer who "has been injured," Mass. Gen. Laws ch. 93A § 9(1),

---

[3] Shaulis also asks us to certify several questions on Chapter 93A to the SJC, which we may do if the questions are determinative of the pending cause of action and there is no controlling precedent.  See Mass. S.J.C. R. 1:03; Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013).  "We have interpreted the SJC's requirement that there be 'no controlling precedent' to prevent certification in cases when 'the course [the] state court[ ] would take is reasonably clear.'"  Id. at 51 (alteration in original) (quoting In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008)).  The fact "[t]hat a legal issue is close or difficult is not normally enough to warrant certification," since otherwise cases involving state law "would regularly require appellate proceedings in two courts."  Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008).  As explained below, because the course the SJC would take on the issues before us is reasonably clear, certification is not appropriate in this case.

by "unfair or deceptive acts or practices in the conduct of any trade or commerce," id. § 2(a). See Rule v. Fort Dodge Animal Health, Inc. (Rule II), 607 F.3d 250, 253 (1st Cir. 2010); see also Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912 (Mass. 2011) ("If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss -- whether that loss be economic or noneconomic -- the consumer is entitled to redress under our consumer protection statute." (quoting Hershenow v. Enterprise Rent-A-Car Co., 840 N.E.2d 526, 535 (Mass. 2006))).

After reviewing the relevant Massachusetts regulations,[4] the district court determined that Nordstrom's alleged pricing scheme "constitut[ed] an unfair or deceptive practice under Chapter 93A." Shaulis, 120 F. Supp. 3d at 48-49. The court further found that Shaulis had adequately alleged that Nordstrom's deception "caused" an identifiable "harm" -- namely, that Shaulis had sufficiently alleged that she was "directly induced" to make a purchase she would not have made, absent the unfair or deceptive practice. Id. at 50, 52. The court held, however, that Shaulis

---

[4] The district court also discussed the applicable portions of the Federal Trade Commission Act and related FTC Guidelines dealing with false advertising and deceptive pricing. However, because the court determined that the SAC adequately alleged a violation of the Code of Massachusetts Regulations, it declined to decide "whether the complaint also allege[d] a deceptive practice under the Federal Trade Commission Act." Shaulis, 120 F. Supp. 3d at 49 n.4.

had failed to allege a legally cognizable injury for purposes of Chapter 93A because Shaulis's "subjective belief that she did not receive a good value, without more, is not enough to establish the existence of a Chapter 93A injury." Id. at 53.

On appeal, Shaulis contends that the district court misread the SJC's Chapter 93A jurisprudence and erroneously concluded that she had failed to adequately allege a legally cognizable injury based on Nordstrom's deceptive pricing scheme. Hence, we first review the relevant case law on Chapter 93A injuries, and then review Shaulis's claim de novo.

**A. Injury under Chapter 93A**

Many courts -- both state and federal -- have struggled to explain what constitutes an injury under Chapter 93A. See Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 n.15 (Mass. 2013) (discussing differing interpretations of earlier SJC opinions); Rule v. Fort Dodge Animal Health, Inc. (Rule I), 604 F. Supp. 2d 288, 298 (D. Mass. 2009) (noting that case law "construing the Chapter 93A . . . injury requirement has had a less than intellectually coherent course of development"). We last explored the parameters of Chapter 93A injuries in 2010 in Rule II. That case involved a Chapter 93A claim by a plaintiff who purchased heartworm medication for her dog, Luke. 607 F.3d at 251. After administering the medication, the plaintiff learned that the FDA had recalled the medication because of harmful side effects. Id.

- 7 -

Plaintiff then brought a class action against the manufacturer of the heartworm medication, alleging that, although Luke was none the worse for wear, she had overpaid for the medication. Id. at 251-52. Plaintiff's theory of the case was that "she purchased [the medication] because of a deception (failure to disclose the risk), the product was 'in reality' worth less than she paid for it (because of that undisclosed risk)," and thus she had suffered "injury," the measure of her damages being "the difference between what she paid and what she would have paid if the risk had been disclosed." Id. at 253.

A central issue in Rule II was whether a "per se" theory of injury -- that is, a claim that the deception itself is the requisite injury -- was sufficient to state a claim under Chapter 93A. Or, as we put the question in Rule II: whether "[C]hapter 93A injury requires that a plaintiff who seeks to recover show 'real' economic damages," or whether "injury as a violation of some abstract 'right' like the right not to be subject to a deceptive act that happened to cause no economic harm" was sufficient. Id. We noted that the plaintiff had suffered no "economic injury in the traditional sense" because she had "used up" the medication for its advertised purpose without ill effect, and she thus held nothing of reduced value nor faced any risk of harm. Id. at 255. We acknowledged, however, that if Rule had sued before Luke consumed the medication, she may have been able

to claim injury based on her overpayment theory, because she would have possessed medication that was not what she bargained for. Id.

In reaching this decision, we observed that "the most recent SJC cases" had "moved away" from the "per se" theory of injury supported by earlier cases -- that is, a claim that an unfair or deceptive act alone constitutes injury -- and had "returned to the notion that injury under [C]hapter 93A means economic injury in the traditional sense." Id. at 254-55; see also Rule I, 604 F. Supp. 2d at 298-306 (surveying the development of the SJC's Chapter 93A jurisprudence). Specifically, we contrasted the SJC's earlier opinions in Leardi v. Brown, 474 N.E.2d 1094 (Mass. 1985), and Aspinall v. Philip Morris Cos., 813 N.E.2d 476 (Mass. 2004), with more recent opinions in Hershenow, 840 N.E.2d at 526, and Iannacchino v. Ford Motor Co., 888 N.E.2d 879 (Mass. 2008), which had rejected the "per se" theory of injury. See Hershenow 840 N.E.2d at 535 ("A consumer is not . . . entitled to redress under [Chapter 93A], where no loss has occurred."); Iannacchino, 888 N.E.2d at 886-87 (explaining that, if properly alleged, a claim that plaintiffs own vehicles with defective door handles, in violation of federal safety regulations, would support a cause of action under Chapter 93A because plaintiffs would have paid for fully compliant vehicles, which they did not receive). We acknowledged, however, that there may remain certain

- 9 -

"exceptions" to this general rule, embodied in older SJC opinions that have not been expressly overruled, but we left to the SJC the task of defining them. Rule II, 607 F.3d at 255 (citing Leardi, 474 N.E.2d at 1101); see also Hershenow, 840 N.E.2d at 538, (Cowin, J., concurring) (noting that Hershenow had "overruled . . . sub silentio" earlier opinions supporting a "per se" theory of injury).

### 1. Tyler

Helpfully, since our opinion in Rule II, the SJC has clarified what constitutes a legally cognizable injury under Chapter 93A, most notably in Tyler v. Michaels Stores, Inc. In Tyler, the plaintiff accused the defendant of violating a statute, Mass. Gen. Laws ch. 93, § 105, that prohibits companies from writing customers' "personal identification information" on credit card transaction forms when the credit card issuer does not require the company to provide such information. 984 N.E.2d at 738 & n.1. The SJC explained that, if the company, as a result of a violation of § 105, "use[d] the [personal identification] information for its own business purposes," such as "by sending the customer unwanted marketing materials or by selling the information for a profit," the company would "ha[ve] caused the consumer a[] [non-economic] injury that [wa]s distinct from the statutory violation itself and [thus] cognizable under [Chapter 93A]." Id. at 746. But the SJC went on to explain that if, by contrast, the company had merely placed the personal information in a file "and never

- 10 -

used the information for any purpose thereafter, a consumer would not have a cause of action for damages" under Chapter 93A, even though the company may have violated § 105 and thereby committed "an unfair or deceptive act." Id. at 746 n.17.

In explaining its decision in Tyler, the SJC stated that a violation of an independent statute -- such as the Code of Massachusetts Regulations here -- does not itself "satisf[y] the injury requirement of c. 93A, § 9," and hence, does not "automatically entitle[ ] the plaintiff to at least nominal damages (and attorney's fees)" under Chapter 93A. Id. at 744–45. Instead, "the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself." Id. at 745 (emphasis added). The SJC thus held that "a plaintiff bringing an action . . . under [Chapter 93A] must allege and ultimately prove that she has, as a result [of the statutory violation], suffered a distinct injury or harm that arises from the claimed unfair or deceptive act." Id. at 745-46 (emphasis added); see also Walsh v. TelTech Sys., Inc., 821 F.3d 155, 161-62 (1st Cir. 2016) (discussing Tyler); Bezdek v. Vibram USA Inc., No. 12-cv-10513-DPW, 2013 WL 639145, at *5 (D. Mass. Feb. 20, 2013) (observing that the SJC has "disavowed the notion that deceptive advertising constitutes per se injury on consumers who purchase the product").

- 11 -

## 2. **Bellermann**

The SJC recently reaffirmed <u>Tyler</u>'s holding in <u>Bellermann</u> v. <u>Fitchburg Gas & Elec. Light Co.</u>, 54 N.E.3d 1106 (Mass. 2016), which postdates the district court's opinion in this case. <u>See</u> 54 N.E.3d 1106. In <u>Bellermann</u>, a state agency determined that a utility company had failed to comply with certain storm preparedness regulations. <u>Id.</u> at 1107. Plaintiffs, customers of the company, filed a class action under Chapter 93A, alleging that they had suffered economic injury by "overpaying for a level of emergency storm preparedness" that the company could not have provided, if a storm had occurred. <u>Id.</u> at 1108. As the plaintiffs saw it, they had adequately alleged injury because "they ha[d] paid for more in terms of quality and reliability of service than they received." <u>Id.</u> at 1109-10.

The SJC rejected the <u>Bellermann</u> plaintiffs' theory of injury. <u>Id.</u> at 1114. Citing <u>Tyler</u> and earlier cases, the SJC distinguished cases where a Chapter 93A plaintiff "suffered an economic injury because . . . the defendants' products did not deliver the full anticipated and advertised benefits, and therefore were worth less, as used or owned, than what the plaintiffs had paid," from those cases where the alleged injury was merely hypothetical or speculative. <u>Id.</u> at 1112. Reaffirming <u>Tyler</u>'s holding that "to meet the injury requirement under [Chapter 93A], a plaintiff must have suffered a 'separate, identifiable

- 12 -

harm arising from the [regulatory] violation' that is distinct 'from the claimed unfair or deceptive conduct itself,'" the SJC concluded that permitting plaintiffs' overpayment theory of injury "would permit class certification . . . whenever a product (or service) fails to conform to a regulatory requirement and the consumer alleges an economic injury based on overpayment for the product." Id. at 1111 (quoting Tyler, 984 N.E.2d at 745).

In other words, the SJC treated the plaintiffs' theory as akin to a per se theory of injury. Because the plaintiffs had alleged only a possibility of adverse consequences -- which did not occur -- they were, in effect, seeking damages based solely on the utility company's violation of the regulations. The court held that such a claim, alleging an "overpayment" for a flawed "product" that never actually underperformed, did not state a cognizable injury under Chapter 93A.

The SJC reached this conclusion in Bellermann by comparing and contrasting its reasoning in three earlier Chapter 93A cases: Iannacchino, Aspinall, and Hershenow. Two of the cases, Iannacchino and Aspinall, involved regulatory noncompliance in which the court had found identifiable economic injury. In the third, Hershenow, the SJC concluded that the defendant's regulatory violation had caused no economic loss. Id. at 1111-13.

Specifically, in Iannacchino, the plaintiffs claimed that their vehicles' door handles did not comply with applicable safety regulations. 888 N.E.2d 882. Although the SJC dismissed the plaintiffs' claims on other grounds, the court observed that safety regulations play "a highly significant role" in a consumer's decision to purchase a vehicle, id. at 886, and thus

> the purchase price paid by the plaintiffs for their vehicles would entitle them to receive vehicles that complied with . . . safety standards or that would be recalled if they did not comply. If [the defendant] knowingly sold noncompliant (and therefore potentially unsafe) vehicles or if [the defendant], after learning of noncompliance, failed to initiate a recall and to pay for the condition to be remedied, the plaintiffs would have paid for more (viz., safety regulation-compliant vehicles) than they received. Such an overpayment would represent an economic loss -- measurable by the cost to bring the vehicles into compliance -- for which the plaintiffs could seek redress under G.L. c. 93A.

888 N.E.2d 886-87.

Bellermann similarly construed the circumstances in Aspinall. There, the SJC had held that purchasers of cigarettes could bring a class action against a manufacturer for falsely claiming that its cigarettes delivered health benefits they did not, in fact, provide. 813 N.E.2d 479-80. The manufacturer labeled the cigarettes as "light," in purported compliance with regulations under which "light" cigarettes were those that delivered lower levels of toxins compared to regular cigarettes. Id. The SJC concluded that the putative class members "were injured when they purchased a product that, when used as directed,

- 14 -

exposed them to substantial and inherent health risks that were not . . . minimized by their choice of the defendant's 'light' cigarettes." Id. at 488. As the Bellermann court interpreted the holding in Aspinall, the consumers had alleged a legally cognizable injury because each consumer "had purchased and smoked cigarettes that did not deliver the advertised health benefits" and they did not receive the benefit (lower toxins) "for which each had paid." Bellermann, 54 N.E.3d at 1112.

The SJC contrasted these cases with Hershenow, in which putative class members who had rented automobiles from the defendant rental company sought class certification based on the defendant's violation of a regulation governing the terms of damage waiver clauses. Although the rental agreement did not comply with applicable regulations, none of the putative class members had been in an accident that triggered the damage waiver clause. Because the invalid provision was never enforced, the SJC concluded that no plaintiff had suffered the necessary, distinct injury that "is an essential predicate for recovery under" Chapter 93A. Hershenow, 840 N.E.2d at 528 (emphasizing that each putative class member was no "worse off during the rental period than he or she would have been had the [damage waiver provision] complied in full"). Hence, "unlike the injuries recognized in Iannacchino and Aspinall," where plaintiffs did not "receive[] the full benefit of the purchase," the plaintiffs in Hershenow received everything

they bargained for and faced no future risk of harm.  Bellermann, 54 N.E.3d at 1113 (quoting Shaulis, 120 F. Supp. 3d at 52).

We can derive from the analyses in Tyler and Bellermann a clear understanding of the SJC's current view of a legally cognizable economic injury under Chapter 93A.  To state a viable claim, the plaintiff must allege that she has suffered an "identifiable harm" caused by the unfair or deceptive act that is separate from the violation itself.  Tyler, 984 N.E.2d at 745. Put another way, a plaintiff must "show 'real' economic damages," as opposed to some speculative harm.  Rule II, 607 F.3d at 253. Accordingly, a claim that alleges only a "per se" injury -- that is, a claim resting only on a deceptive practice, regulatory noncompliance, or the "impairment of an abstract right without economic loss" -- is insufficient to state a Chapter 93A claim. Id.; see also Tyler, 984 N.E.2d at 745-46.  It is thus not enough to claim that the defendant's improper conduct created a risk of "real economic damages."  Rule II, 607 F.3d at 253 (internal quotation marks omitted).  Speculation concerning still inchoate harm does not establish the distinct injury that "is an essential predicate for recovery under" Chapter 93A.  Bellermann, 54 N.E.3d at 1113 (quoting Hershenow, 840 N.E.2d at 528); see also Rule II, 607 F.3d at 253.  Instead, legally cognizable injuries under Chapter 93A must involve objective, "identifiable" harm that goes

- 16 -

beyond the deception itself.  Tyler, 984 N.E.2d at 745; Iannacchino 888 N.E.2d at 888.

## B. Application

Shaulis claims that she has suffered a legally cognizable injury because she was "induced" to make a purchase she would not have made, but for the false sense of value created by Nordstrom's pricing scheme.  She primarily asserts that her injury is the loss of $49.97 because, in the district court's words, "she would rather have her money -- which she could use to purchase other things -- than the sweater."  Shaulis, 120 F. Supp. 3d at 52.  Although the SJC has not addressed an "induced purchase" theory of injury exactly like Shaulis's, we think it is clear, given the discernible principles in the SJC's case law, that Shaulis's claim falls short of alleging the "identifiable" injury, distinct from the claimed deceptive conduct itself, that the SJC requires for individual relief under Chapter 93A.  Tyler, 984 N.E.2d at 745; see also Bellermann, 54 N.E.3d at 1111.

The flaw in Shaulis's theory of injury -- that the mere purchase of an item may constitute cognizable injury, regardless of the item's specific qualities -- is that it merges the alleged deception with the injury.  To illustrate that point, we offer two scenarios.  First, if Shaulis had not purchased a sweater after viewing the offending "Compare At" price tag, and later learned that Nordstrom's pricing scheme violated the Massachusetts Code of

- 17 -

Regulations, she obviously would not have suffered a legally cognizable Chapter 93A injury.  To claim injury based on the deceptive tag would be to rely on the "per se" theory of injury the SJC has rejected.

In the second scenario, taking the facts as Shaulis alleges them, she purchased the sweater, but claims she did so only because the tag suggested that the sweater was worth more than the price Nordstrom actually charged.  This contention is simply another way of saying that Shaulis was wrongfully deceived by Nordstrom.  She identifies no objective injury traceable to the purchased item itself -- for example, that the sweater was poorly made or that its materials were misrepresented.  Such a purchase-as-injury claim collapses the SJC's required distinction between deception and injury by attempting to plead an assertion about a consumer's disappointed expectations of value in place of an allegation of real economic loss.

Shaulis contends that this construction reads the SJC's definition of injury too narrowly.  In her view, her injury is clear: she no longer has her money, and the sweater she does have is "worth nothing at all to [her] since she never would have bought it" absent Nordstrom's deception.  Thus, Shaulis argues, her injury is concrete -- more like the injuries alleged by owners of noncompliant cars in Iannacchino than like the speculative or never-realized harms alleged in Rule II or Hershenow -- and,

- 18 -

therefore, she has alleged more than the mere regulatory violation the SJC has rejected as a viable form of Chapter 93A injury.

However, Shaulis's attempt to distinguish her injury from those of the unsuccessful plaintiffs in cases like Rule II, Hershenow, and Bellermann overlooks a primary rationale for those decisions, namely, that the plaintiffs had received everything they had bargained for. Thus, in Rule II, the plaintiff received effective medication without side effects. In Hershenow, the plaintiffs received adequate rental cars, and the illegal damage waivers in their rental contracts were never enforced. And, in Bellermann, the plaintiffs received all of the electrical service to which they were entitled.

By contrast, in cases where plaintiffs' Chapter 93A claims were successful, there was a clear connection between the defendant's regulatory violation and an objective injury. In Iannacchino, for example, the SJC noted that plaintiffs could adequately plead injury where the cars they purchased purported to, but did not, meet federal safety regulations, the defendant refused to recall and fix the vehicles, and the plaintiffs' damages could be easily identified by measuring the cost to bring the vehicles into compliance with the regulations. Iannacchino, 888 N.E.2d at 886-87; see also Bezdek, 2013 WL 639145, at *6 (recognizing "price premium" theory of injury adequately alleged

- 19 -

where plaintiffs claimed they paid more for shoes that promised to, but did not, provide specific health benefits).

Unlike the plaintiffs in Iannacchino, however, Shaulis's complaint fails to identify any bargained-for characteristic of the sweater that she has not received. As the district court explained, Shaulis "arguably got exactly what she paid for, no more and no less," emphasizing her failure to allege that the sweater was "worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective." Shaulis, 120 F. Supp. 3d at 51-52. At bottom then, Shaulis's alleged "injury" is only that Nordstrom tricked her into believing that she was getting a bargain, and not, as was the case in Iannacchino, that the product itself was deficient in some objectively identifiable way. That perceived adverse impact -- as the district court put it, "the subjective belief as to the nature of the value [Shaulis] received" -- does not state a legally cognizable economic injury under Chapter 93A because it fails to identify anything objective that Shaulis bargained for that she did not, in fact, receive.

Perhaps realizing this flaw in her claims, Shaulis attempts to reframe her injury as a loss of the benefit of the bargain, contending that the "Compare At" price tag was a false representation that the sweater was of "high quality." But this

reformulation is fundamentally no different than her "induced purchase" theory of injury because Shaulis does not explain how the sweater was not of "high quality" in any objective way. As the SJC explained in Iannacchino, a plaintiff's "bare assertion" that a product is deficient in some way is "conclusory and can be subjective" and thus "does not suffice to state a viable claim." 888 N.E.2d at 888. Instead, claims of injury premised on "overpayment" for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated. See id. ("[T]he complaint must identify a legally required standard that the [product] w[as] at least implicitly represented as meeting, but allegedly did not.").

Shaulis, however, makes no objective claims, instead relying only on inferences she drew about the quality of the sweater based on the "Compare At" price tag. Indeed, Shaulis's assertion that the sweater is "worth nothing to [her]" proves too much, as it demonstrates that the only injury she has alleged is based solely on her subjective belief that she got a bad deal. Shorn of its conclusory allegations, the complaint adequately alleges only that Nordstrom violated the Massachusetts Code of Regulations and that Shaulis purchased a sweater for $49.97 that she no longer wants.

Shaulis's attempt to analogize this case to fake-Rolex hawking in Hong Kong is also unpersuasive. She claims that the district court "apparently would find no actionable grievance in the fact that the purchase was not a real Rolex but a replica made of inferior materials, selling at a 99% discount." There is an obvious distinction there: falsely advertising a watch as a "Rolex" is a material misstatement about the watch's quality. Shaulis alludes to what she purchased as a "phony designer sweater" but has made no allegations that Nordstrom ever represented it as such.

It may be the case that Shaulis, in fact, made an inference from price to value (the claimed "high quality" of the sweater) based on Nordstrom's "Compare At" price tag, or even that Nordstrom hopes some customers will make this inference. See Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value . . . [of a] product."). Indeed, it is presumably just this kind of erroneous inference that Massachusetts seeks to prevent by regulation. Yet, not only have Massachusetts courts declined to find injury under Chapter 93A where the plaintiff relies entirely on her subjective belief as to the value received, but federal courts also have routinely rejected claims of injury under Chapter 93A that were not grounded in any objective measure. See, e.g., In re Celexa &

- 22 -

_Lexapro Mktg. and Sales Practices Litig._, No. 14-cv-13848-NMG, 2015 WL 3751422, at *8 (D. Mass. June 15, 2015) (rejecting "informed choice" theory of injury where plaintiffs alleged they would not have purchased drug had they known certain information); _Sergeants Benv. Ass'n Health & Welfare Fund_ v. _Sanofi-Aventis U.S. LLP_, 20 F. Supp. 3d 305, 336 (E.D.N.Y. 2014), _aff'd_, 806 F.3d 71 (2d Cir. 2015) (rejecting induced purchase theory of injury under Chapter 93A).

Appellate courts reviewing the consumer protection statutes of other states also have consistently rejected similar purchase-as-injury claims. _See, e.g._, _Kim_ v. _Carter's Inc._, 598 F.3d 362, 366 (7th Cir. 2010) (rejecting induced purchase theory of injury where plaintiff alleged she was deceived by fictitious price tags on clothing); _Small_ v. _Lorillard Tobacco Co._, 720 N.E.2d 892, 898 (N.Y. 1999) (rejecting induced purchase theory of injury under New York law because it "sets forth deception as both act and injury"). Absent allegations of real loss grounded in some objective measure, Shaulis's "induced purchase" theory of injury is simply the "per se" theory of injury in new clothing, and hence, it is insufficient to adequately allege injury under the SJC's current Chapter 93A jurisprudence.

In a final attempt to salvage her claim for damages, Shaulis changes tack, arguing that even if she has not suffered an economic injury by being induced to purchase the sweater, she has

suffered a separate injury in the form of expenses incurred traveling to the Nordstrom Rack.[5]  Shaulis's "travel expenses" theory of damages, however, was not pleaded in the SAC, and she did not raise it in the district court.  Hence, we need not address it here.  In any event, this argument would also fail because Shaulis does not explain how a deceptive price tag could have caused her to travel to the Nordstrom Rack in the first place.[6] See Walsh, 821 F.3d at 160 ("A plaintiff's failure to establish

---

[5] Shaulis also claims that she is entitled to damages under Chapter 93A's statutory damages provision and the SJC's acknowledgment in Tyler that "injury or harm worth more than a penny" entitles a plaintiff to statutory damages.  See 984 N.E.2d at 746 n.20.  Shaulis misapprehends the relevant law.  Chapter 93A, § 9 provides that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater."  This statutory damage provision does not, however, supplant the requirement that a plaintiff prove injury under § 9. Instead, "[i]t merely eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act." Hershenow, 840 N.E.2d at 526 n.18 (emphasis added).  Tyler, however, involved noneconomic injury (an invasion of the consumer's privacy), and its discussion of "injury or harm worth more than a penny" dealt with the measure of damages, not the establishment of injury in the first instance. Here, Shaulis has simply not pleaded a legally cognizable injury, an inquiry that is antecedent to the measurement of damages.

[6] Shaulis attempts to circumvent this causation problem by claiming that she was lured to the Nordstrom Rack by unspecified advertising that promised bargains.  These claims are too vague to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for claims sounding in fraud.  Martin v. Mead Johnson Nutrition Co., No. 09-cv-11609, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement.").

both factual causation and proximate causation is fatal to her Chapter 93A claim.").

## C. Injunctive Relief under Chapter 93A

Shaulis separately assigns error to the district court's failure to grant her request for injunctive relief under Chapter 93A. In particular, Shaulis contends that she is entitled to injunctive relief under Chapter 93A regardless of whether her claim for damages is dismissed.

Shaulis's only support for this claim is Diviacchi v. Speedway LLC, in which the district court held that "a [Chapter 93A] plaintiff may pursue a claim for purely injunctive relief . . . absent any injury." 109 F. Supp. 3d 379, 386 (D. Mass. 2015). In making this determination, the Diviacchi court focused on language in Tyler that it said suggested that the requirement of proving injury applied only to a claim for damages. Id. at 385-86. Specifically, the Diviacchi court acknowledged that Tyler demonstrated "a broad shift away from the notion that the invasion of a legal right, standing alone, is sufficient to support a claim under Chapter 93A," but the court noted that the SJC's silence on the availability of equitable relief counseled in favor of finding that such relief was available. Id.; see Shaulis, 120 F. Supp. 3d at 50 n.5 (discussing Diviacchi).

We find this reasoning unpersuasive, as did the district court. Neither the text of Chapter 93A nor the relevant case law

supports this argument.  The plain language of Chapter 93A limits the class of consumers who may bring an action to those who "ha[ve] been injured," and offers as remedy both "damages and . . . equitable relief, including an injunction."  Mass. Gen. Laws ch. 93A, § 9(1) (emphasis added).  We find nothing in the text of Chapter 93A that obviates the need to prove injury in private suits for injunctive relief, or even suggests that private suits for equitable relief should somehow be treated differently than claims for damages.

Further, the SJC has never explicitly distinguished between the form of injury required for damages and that required for injunctive relief.  See Hershenow, 840 N.E.2d at 535 (holding that Chapter 93A plaintiff must prove (1) an "invasion" of a "legally protected interest" and (2) that the "invasion causes the consumer a loss," either "economic or non-economic"); cf. Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 242 (1st Cir. 2013) (vacating dismissal of claims for both damages and injunctive relief under Chapter 93A, and noting that claim for injunctive relief was "derivative of" plaintiff's claim for damages).  Moreover, the SJC's most recent opinion on point, Bellermann, lacks any language distinguishing claims for damages from claims for injunctive relief.  See 54 N.E.3d at 1110 ("To succeed in [a] motion for class certification under [Chapter 93A] . . . plaintiffs . . . must show that the assertedly unfair or deceptive act or practice

- 26 -

. . . caused their injuries."). Hence, consistent with the plain language of the statute, we hold that a private cause of action under Chapter 93A -- either for damages or injunctive relief -- requires a plaintiff to allege injury, as that term is defined by the SJC. See Tyler, 984 N.E.2d at 745 ("The invasion of a consumer's legal right . . . may be a violation of G.L. c. 93A, § 2 . . . but the fact that there is such a violation does not necessarily mean the consumer has suffered an injury.").

Shaulis gravely warns, however, that failure to provide for a private cause of action for injunctive relief will leave Massachusetts consumers unprotected from retailers' dishonest pricing schemes. We disagree. As we noted in Rule II, the Massachusetts Attorney General "has authority [under Chapter 93A] to seek heavy sanctions on those who engage in deceptive advertising even without injury." 607 F.3d at 255 (emphasis added) (citing Mass. Gen. Laws ch. 93A, § 4); see also Rule I, 604 F. Supp. 2d at 304 ("Chapter 93A was not 'mean[t] to authorize purely vicarious suits by self-constituted private attorneys-general.'" (alteration in original) (quoting Leardi, 474 N.E.2d at 1102)). It may be the case that Nordstrom's allegedly unlawful conduct needs to be deterred, "but not necessarily by those who . . . were not injured." Rule II, 607 F.3d at 255. Hence, because Shaulis has not adequately alleged that she suffered a legally cognizable

injury, her Chapter 93A claims for damages and injunctive relief were both properly dismissed.

### III. Common Law Claims

Shaulis's remaining common law claims -- for fraud, unjust enrichment, and breach of contract -- fare no better than her Chapter 93A claim. We address each in turn.

First, Shaulis's claim for fraudulent misrepresentation fails for the same reason as her Chapter 93A claim: she has not alleged an actionable injury caused by Nordstrom's allegedly false statement. Specifically, under Massachusetts law, a claim for fraudulent misrepresentation requires a pecuniary loss. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1135-36 (Mass. 2005). Although Shaulis alleges that she would not have purchased the sweater but for Nordstrom's deception -- and, hence, that we should infer that her "loss" is the total purchase price -- she does not allege that the sweater she actually received was worth less than she paid, or that the sweater was defective in some way. Absent such allegations, her claim for fraudulent misrepresentation fails to allege any pecuniary loss.

Shaulis contends, however, that she is at least entitled to consequential damages on her fraud claim -- in the form of travel expenses to the Nordstrom Rack, shipping expenses to return the sweater, or the cost of telephone calls to Nordstrom to complain. This argument also fails. Although consequential

damages are generally available for fraudulent misrepresentation, see Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 12 (1st Cir. 2004), Shaulis does not allege any consequential damages in the SAC. As explained above, the "travel expenses" theory of damages is alleged for the first time on appeal, and, even if this theory had been properly alleged in the SAC, it fails for the simple reason that plaintiff could not have seen the deceptive price tag until she had already reached the store. See Kiluk v. Select Portfolio Servicing, Inc., No. 11-civ-10731-FDS, 2011 WL 8844639, at *5 (D. Mass. Dec. 19, 2011) ("[T]he complaint must allege that plaintiffs suffered a pecuniary loss as a consequence of their reliance on defendant's alleged misrepresentation.").

As for Shaulis's breach of contract claim, we find no allegations in the SAC that the sales contract itself was actually breached. See Kim, 598 F.3d at 364 (finding no breach of contract where item was advertised for "30% off an inflated, fictitious" price, because "[b]y charging this agreed price in exchange for ownership of the clothing, [defendant] gave the plaintiffs the benefit of their bargain"). The agreement between Shaulis and Nordstrom was nothing more than a straightforward, everyday sales contract for the purchase of a sweater. By charging the agreed

price in exchange for ownership of the sweater, Nordstrom fulfilled its contractual obligations.[7]

Shaulis's common law claim for unjust enrichment also fails because a party with an adequate remedy at law cannot claim unjust enrichment. ARE-Tech Square, LLC v. Galenea Corp., 91 Mass. App. Ct. 1106 (Mass. App. Ct. 2017); see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 234 (1st Cir. 2005) (noting that unjust enrichment serves only as an "equitable stopgap for occasional inadequacies in contractual remedies at law"). Moreover, Massachusetts law does not permit litigants "to override an express contract by arguing unjust enrichment." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006). Although Shaulis argues that, if her other claims are dismissed, she effectively has no adequate remedy, this argument misapprehends the relevant law. It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment. See Reed v. Zipcar, Inc.,

---

[7] Shaulis also makes an undeveloped claim that Nordstrom violated the implied covenant of good faith and fair dealing. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). However, "[t]he duty of good faith and fair dealing concerns the manner of performance" of the contract, as opposed to the negotiation of its terms. Id. Moreover, the implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. Id. Here, because there are no allegations in the SAC regarding Nordstrom's performance of its contract with Shaulis, this claim also fails.

883 F. Supp. 2d 329, 334 (D. Mass. 2012) (noting that the viability of the remedy at law "is beside the point" and the "mere availability" of a remedy at law bars a claim for unjust enrichment), aff'd, 527 F. App'x 20 (1st Cir. 2013); Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("Plaintiff's negligence and [C]hapter 93A claims . . . preclude a claim for unjust enrichment. The disposition of those claims is irrelevant.").

## IV. Motion for Reconsideration and Leave to Amend

Finally, we find that the district court did not err in denying Shaulis's motion for reconsideration and for leave to amend.

The district court held "that [Shaulis had] not made the necessary showing of newly discovered evidence or a manifest error of law to warrant reconsideration," and thus declined to vacate the judgment of dismissal under Fed. R. Civ. P. 59 or 60 to allow leave to amend. See Acevedo-Villalobos v. Hernández, 22 F.3d 384, 389 (1st Cir. 1994) ("Unless postjudgment relief is granted, the district court lacks power to grant a motion to amend the complaint under Rule 15(a)."). As explained above, the district court committed no legal error in dismissing Shaulis's Chapter 93A and common law claims. Hence, Shaulis's only remaining argument for post-judgment relief is based on purported newly discovered evidence -- a Nordstrom "Compliance Manual" that Shaulis alleges

demonstrates "that Nordstrom has intentionally and deliberately implemented" a deceptive pricing scheme. The district court, however, found that Shaulis had adequately pleaded that Nordstrom's alleged pricing scheme "constitut[ed] an unfair or deceptive practice under Chapter 93A." Shaulis, 120 F. Supp. 3d at 49. Nordstrom has not even appealed this determination, and, hence, cumulative allegations of Nordstrom's allegedly deceptive conduct cannot help Shaulis avoid dismissal of her claims. Here, the primary deficiency in the SAC was that Shaulis failed to adequately plead that she suffered a legally cognizable injury; further allegations of deception do nothing to remedy that flaw.

Affirmed.