# United States Court of Appeals
## For the First Circuit

No. 15-1987

SIOBHAN WALSH,

Plaintiff, Appellant,

v.

TELTECH SYSTEMS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Richard B. Reiling for appellant.
Mark C. Del Bianco, with whom Law Office of Mark C. Del
Bianco, Sean T. Carnathan, Joseph P. Calandrelli, and O'Connor
Carnathan & Mack LLC were on brief, for appellee.

May 2, 2016

BARRON, **Circuit Judge**.  This case concerns a prepaid minutes-based calling service -- named SpoofCard -- that allows customers to disguise the phone number from which they place calls. In 2009, a customer used that service to disguise her identity so that she could make it seem like someone else was sexually harassing the appellant.  The appellant sued the provider of that service, TelTech Systems, Inc. ("TelTech"), under Massachusetts's consumer protection statute.  The District Court granted summary judgment for the company on the ground that no reasonable jury could find that TelTech caused the appellant's injuries.  We affirm.

## I.

"On review of an order granting summary judgment, we recite the facts in the light most favorable to the nonmoving party." Commodity Futures Trading Comm'n v. JBW Capital, 812 F.3d 98, 101 (1st Cir. 2016) (quotation marks and citation omitted). As TelTech was the moving party, we recite the facts in the light most favorable to the appellant, Siobhan Walsh.

TelTech's SpoofCard service enables customers, when placing phone calls, to "spoof" or disguise their caller ID by selecting the number they would like to appear on recipients' caller ID screens.  That service also permits customers to alter their voices -- for example, by making a woman's voice sound like a man's voice -- in the course of a call.  And, finally, that

- 2 -

service provides for a means to ensure that calls are recorded and stored.

The events that gave rise to the current suit relate to a particularly ugly -- but, the record sadly indicates, by no means altogether unusual -- use of the SpoofCard service. In January 2009, Walsh lived in an apartment complex in Quincy, Massachusetts. John Luciano lived in that same complex. Luciano worked as a chef at a local restaurant. He was acquainted with a man by the name of Michael DiLorenzo, who was married to a woman by the name of Johnienne DiLorenzo.

Johnienne had once worked at Luciano's restaurant, and Luciano had helped her to get the job. But Luciano testified that he fired Johnienne because "she kept screwing it up" and "showing up late." Johnienne testified that, in fact, she quit the job due to unwanted sexual advances from Luciano.

What matters for present purposes is that one night, after Johnienne had been fired by Luciano, she was at a party when she overheard her friends discussing SpoofCard. Johnienne's friends told her about the SpoofCard website and demonstrated how SpoofCard worked by calling each other's phones and using the SpoofCard features. Johnienne later told her husband, Michael, about SpoofCard.

On January 15, 2009, one of the DiLorenzos -- it is not clear who -- purchased SpoofCard minutes from the SpoofCard

website.  On January 28, 2009, Johnienne made six phone calls to Walsh using SpoofCard to mimic a man's voice and to make it appear as if the calls were placed using Luciano's telephone number.

In those calls, Johnienne -- posing as Luciano -- made a series of sexually harassing comments to Walsh.  Through the use of the SpoofCard service, the January 28 phone calls between Johnienne and Walsh were recorded without Walsh's consent, potentially in violation of Mass. Gen. Laws ch. 272, § 99 ("Chapter 272, § 99"), which, among other things, proscribes the recording of phone conversations without the consent of each party to the call.

Walsh, believing that Luciano had made the calls, reported Luciano to the Quincy Police Department later that same day.  Luciano was arrested on the evening of January 28, 2009, on charges of criminal threatening and criminal harassment.  Luciano spent several days in jail.

On February 2, 2009, Walsh received several voicemails from a blocked number.  The voicemail messages threatened retaliation if Walsh did not drop the charges against Luciano. Walsh believed these calls, too, came from Luciano, and the confusion about the source of the calls ultimately led authorities to bring felony witness intimidation charges against Luciano.  As a result of these events, Walsh moved out of her apartment and quit a job working at the Boston Garden.

According to Walsh's complaint, the DiLorenzos, on December 4, 2009, admitted to Quincy police that they called Walsh on January 28, 2009, and that they made it appear as if the call were coming from Luciano's phone number. The Assistant District Attorney, according to Walsh, thereafter dropped the charges against Luciano and pursued charges against the DiLorenzos for criminal harassment, criminal threatening, witness intimidation, and misleading a police officer.

On December 2, 2013, Walsh filed a complaint against TelTech in the United States District Court for the District of Massachusetts. Walsh alleged that TelTech engaged in a number of "unfair and deceptive acts and practices" in violation of Mass. Gen. Laws ch. 93A, § 2 ("Chapter 93A"). In particular, Walsh alleged that TelTech violated Chapter 93A by violating Chapter 272, § 99, and by "offer[ing] the SpoofCard service" while "encourag[ing] [the] use of the SpoofCard for illegal purposes" (as evidenced by the promotional material on SpoofCard's website).[1] For relief, Walsh requested compensatory damages (in the amount of $5 million), treble damages, punitive damages, disgorgements of profits from the sale of the SpoofCard service, and attorneys'

---

[1] Walsh also alleged that TelTech violated a number of other Massachusetts statutes, such as Mass. Gen. Laws ch. 266, § 37E (prohibiting identity theft), and that these violations each constituted a violation of Chapter 93A. But Walsh does not make any argument on appeal regarding these other theories of liability.

fees and costs under Chapter 93A, as well as an injunction against the future sale and promotion of SpoofCard.

On January 30, 2015, TelTech filed a motion for summary judgment. Walsh filed a memorandum opposing TelTech's motion on February 25, 2015. On March 19, 2015, Walsh filed a motion for leave to file a sur-reply.

On July 30, 2015, the District Court granted TelTech's motion for summary judgment. The District Court held that no reasonable jury could find that TelTech's actions caused Walsh's injuries. The District Court found that the offering of the service alone could not give rise to liability under Chapter 93A, because spoofing has legitimate purposes. And the District Court found that the promotional material on TelTech's website could not give rise to liability under Chapter 93A because there was no evidence that the DiLorenzos viewed that material, much less that the DiLorenzos were influenced by it. Finally, the District Court denied Walsh's motion for leave to file a sur-reply, in part because Walsh gave the court no reason to deviate from its rule disfavoring the filing of sur-replies.

On appeal, Walsh makes two main arguments as to how the District Court erred. First, Walsh contends that the District Court failed to address Walsh's contention that TelTech's violation of Chapter 272, § 99, constituted a violation of Chapter 93A. Second, Walsh contends that the District Court erroneously

disposed of her remaining Chapter 93A claims on causation grounds. We take up each of these contentions in order.[2]

## II.

Because we are reviewing an award of summary judgment, we may affirm "only if we, like the District Court, conclude that 'the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" McCue v. Bradstreet, 807 F.3d 334, 340 (1st Cir. 2015) (quoting McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014)). We review "de novo, drawing all reasonable inferences in favor of the nonmoving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Id. (quoting Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)).

---

[2] Walsh also contends that the District Court abused its discretion in denying Walsh's motion for leave to file a sur-reply. But we see no basis for concluding that the District Court abused its discretion in this regard. When granting TelTech's motion for summary judgment, the District Court refrained from relying on any new arguments TelTech set forth in its reply brief (to the extent any arguments in the brief could be construed as "new"). See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998) (noting that district courts do not abuse their discretion in precluding sur-replies when they "refrain[] from relying on any new material contained in the reply brief"). Moreover, Walsh gave the District Court no reason to overlook her failure to make in her memorandum opposing TelTech's motion for summary judgment the argument she intended to make in sur-reply. And no such reason is apparent to us, as Walsh had notice and a reasonable opportunity to make that argument by the time she filed her opposing memorandum. See id. at 1164-65 (noting that, consistent with the purposes of Fed. R. Civ. P. 56(c), nonmovants are entitled to notice and reasonable opportunity to respond to the movant's summary judgment materials).

## III.

Chapter 93A is a broad, Massachusetts consumer protection statute. A plaintiff seeking relief under Chapter 93A must prove that the defendant engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

Under Chapter 93A, an act or practice is unfair if it falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness"; "is immoral, unethical, oppressive, or unscrupulous"; and "causes substantial injury to consumers." PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975) (quoting 29 Fed. Reg. 8325, 8355 (1964)). To rise to the level of an "unfair" act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature. See Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014). Under Chapter 93A, an act or practice is deceptive "if it possesses a tendency to deceive" and "if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 486-87 (Mass. 2004) (alteration in original) (quotation marks and citations omitted).

The Massachusetts Supreme Judicial Court ("SJC") has held that "causation is a required element of a successful [Chapter] 93A claim." Id. at 491. To establish causation, a

- 8 -

plaintiff must "prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." Rhodes v. A.I.G. Domestic Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012). A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim. See Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 535 (Mass. 2006); McCann v. Davis, Malm & D'Agostine, 669 N.E.2d 1077, 1079 (Mass. 1996).

Walsh sets forth a number of theories as to how TelTech violated Chapter 93A. We first consider Walsh's contention that TelTech is liable under Chapter 93A because TelTech violated an independent statute, Chapter 272, § 99. We then consider Walsh's several contentions that TelTech is liable under Chapter 93A because TelTech proximately caused the injuries Walsh suffered from the harassing nature of the January 28 calls.

**A.**

Walsh contends that "the District Court erred by failing to consider [Walsh's] 93A claim based on [TelTech's] purposeful violation of [Chapter 272, § 99]," even though Walsh set forth that theory of liability in both her complaint and in her memorandum opposing TelTech's motion for summary judgment. We may affirm the District Court's grant of summary judgment, however, on any ground made manifest by the record, including one not reached by the District Court. See Peabody Essex Museum, Inc. v. U.S.

- 9 -

<u>Fire Ins. Co.</u>, 802 F.3d 39, 43 (1st Cir. 2015).  And we do so here on the ground that Walsh has failed to identify an injury arising from any alleged violation of Chapter 272, § 99, that is distinct from the alleged violation itself.[3]

Walsh, relying on <u>Leardi</u> v. <u>Brown</u>, 474 N.E.2d 1094 (Mass. 1985), contends that she is entitled to recover at least nominal damages under Mass. Gen. Laws ch. 93A, § 9(3), by virtue of TelTech's violation of Chapter 272, § 99.  Walsh appears to contend that TelTech violated Chapter 272 in two respects, as she refers to both Mass. Gen. Laws ch. 272, § 99(C), which prohibits secret recordings of phone calls without the consent of all the recorded parties, and Mass. Gen. Laws ch. 272, § 99(3)(A), which prohibits the use of information obtained via such secret recordings.

The problem for Walsh is that the SJC has recently made clear that the violation of an independent statute such as Chapter 272, § 99, does not itself "satisf[y] the injury requirement of c.

---

[3] We assume without deciding that a claim premised on a violation of Chapter 272, § 99 is actionable under Chapter 93A, notwithstanding that that provision has its own civil action and civil remedies provision, <u>see id.</u> § 99(Q), and is part of a complex regulatory scheme.  <u>See</u> <u>Reiter Oldsmobile, Inc.</u> v. <u>Gen. Motors Corp.</u>, 393 N.E.2d 376, 378 (Mass. 1979); <u>Cabot Corp.</u> v. <u>Baddour</u>, 477 N.E.2d 399, 402 (Mass. 1985).  <u>But see</u> 940 Mass. Code. Regs. § 3.16(3); <u>MacGillivary</u> v. <u>W. Dana Bartlett Ins. Agency of Lexington, Inc.</u>, 436 N.E.2d 964, 969 (Mass. App. Ct. 1982).  We also assume without deciding that TelTech violated Chapter 272, § 99, either as a principal or as an aider and abettor, and that TelTech's conduct otherwise satisfies the requirements of Chapter 93A, § 2.  <u>See</u> <u>McDermott</u> v. <u>Marcus, Errico, Emmer & Brooks, P.C.</u>, 775 F.3d 109, 120 (1st Cir. 2014).

93A, § 9," and thus does not "automatically entitle[] the plaintiff to at least nominal damages (and attorney's fees)" under Chapter 93A. Tyler v. Michael Stores, Inc., 984 N.E.2d 737, 744-45 (Mass. 2013) (clarifying the scope of Leardi). Rather, "a plaintiff bringing an action . . . under c. 93A, § 9, must allege and ultimately prove that she has, as a result [of the statutory violation], suffered a distinct injury or harm that arises from the claimed unfair or deceptive act." Id. at 745 (emphasis added).

In Tyler, the plaintiff accused the defendant of violating a statute, Mass. Gen. Laws ch. 93, § 105 ("§ 105"), that prohibits companies from writing customers' "personal identification information" on credit card transaction forms when the credit card issuer does not require the company to provide such information. Tyler, 984 N.E.2d at 738 & n.1. The SJC explained that if the company, as a result of a violation of § 105, "use[d] the [personal identification] information for its own business purposes," such as "by sending the customer unwanted marketing materials or by selling the information for a profit," the company would "ha[ve] caused the consumer an injury that [wa]s distinct from the statutory violation itself and [thus] cognizable under G.L. c. 93A, § 9." Id. at 746. But the SJC went on to explain that if, by contrast, the company had placed the personal information in a file "and never used the information for any purpose thereafter, a consumer would not have a cause of action

- 11 -

for damages" under Mass. Gen. Laws ch. 93A, § 9(3), even though the employer may have violated § 105 and thereby infringed on the customer's privacy. Id. at 746 n.17.

Walsh does not address Tyler and thus makes no developed argument that she suffered a distinct injury within the meaning of that case. The closest she comes to making such an argument is when she asserts that TelTech "presumably" utilized the January 28 recordings as part of its "prank calls app." TelTech's "prank calls app" feature permitted users to listen to randomly selected recorded calls made by SpoofCard customers. But Walsh provided no evidence to support her bare assertion that TelTech used the recordings in connection with this feature. Because Walsh has failed to create a genuine issue of material fact as to whether she suffered a "distinct injury," Tyler, 984 N.E.2d at 746, we affirm the District Court's award of summary judgment on the Chapter 93A claim to the extent that claim is premised on TelTech's alleged violation of Chapter 272, § 99.[4]

**B.**

Walsh next contends that the District Court erred by ruling that TelTech was not liable under Chapter 93A for the

---

[4] Walsh argues for the first time in her reply brief that she suffered emotional distress damages as a result of TelTech's alleged violation of Chapter 272, § 99, and thus any argument along those lines is waived. See N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (1st Cir. 2001).

- 12 -

injuries Walsh suffered due to the harassing nature of the calls that Johnienne made using the SpoofCard service.  Here, too, we affirm.

Walsh initially contends there is a genuine issue of material fact as to whether Johnienne viewed certain promotional material on the SpoofCard website.  Walsh contends that such material encouraged customers to engage in illegitimate uses of the SpoofCard service.  Walsh bases her contention regarding what the record shows about what material Johnienne saw on the fact that Johnienne testified that she could not recall what, if anything, she saw on the SpoofCard website.  Walsh then contends that if a reasonable jury could find that Johnienne viewed the offending promotional material, then a reasonable jury could also find that TelTech caused Walsh's injuries.

The District Court supportably found, however, that there was insufficient evidence to permit a reasonable jury to find that the DiLorenzos viewed the offending promotional material -- that is, there was insufficient evidence that, in the course of purchasing the SpoofCard service, the DiLorenzos would have been exposed to the webpages on which such promotional material appeared.  These findings are in no way contradicted by the testimony Johnienne gave about her limited recollection of what, if anything, she saw on the SpoofCard website.  For that reason, we agree with the District Court that Walsh has failed "to

- 13 -

present definite, competent evidence" from which a jury could reasonably infer that Johnienne viewed the offending material. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). We thus affirm the District Court's summary judgment ruling with respect to this theory of liability.

Walsh also contends that TelTech ought to be held liable under Chapter 93A, apparently on a "deceptive" practices theory, for failing to disclose the legal risks of using the SpoofCard service as Johnienne did. See 940 Mass. Code Regs. § 3.16(2) (stating that a person may be held liable under Chapter 93A for failing to disclose to a buyer "any fact, the disclosure of which may have influenced the buyer . . . not to enter into the transaction"). In that connection, Walsh asserts that Johnienne would not have made the January 28 calls to Walsh if TelTech had disclosed the risks of engaging in the conduct at issue here.

The District Court did not expressly address Walsh's "failure to disclose" theory. But Walsh has failed to develop an argument to support such a theory. For example, Walsh does not address whether TelTech was under an obligation to disclose the risks to Johnienne, whom the record shows may not have even purchased the SpoofCard service. Similarly, Walsh does not address whether reliance on the absence of a disclosure of this sort would have been reasonable. See Edlow v. RBW, LLC, 688 F.3d 26, 39 (1st Cir. 2012). Nor does Walsh address how TelTech's terms of

- 14 -

service -- which contained legal disclaimers and which the uncontroverted evidence in the record shows were accepted by the purchaser of the SpoofCard service -- bears on the matter. Walsh merely asserts that disclosure to Johnienne would have prevented the injurious conduct from occurring. We thus affirm the District Court's award of summary judgment with respect to that theory as well. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Finally, Walsh contends that TelTech ought to be held liable under Chapter 93A, apparently on an "unfair" practices theory, for designing SpoofCard and promoting it "in the exact manner for which" Johnienne used the service. In pressing this theory of liability, Walsh appears to contend that TelTech's liability under Chapter 93A does not depend on the DiLorenzos' having seen the promotional material on TelTech's website.

In so contending, Walsh may mean to argue that SpoofCard can only be used illegitimately and thus that Walsh's injuries were necessarily proximately caused by the mere offering of the SpoofCard service, without regard to how TelTech promoted the service. To the extent that is Walsh's contention, we agree with the District Court's finding that the record does not support the factual predicate about the nature of the service on which that contention would depend. See Teltech Sys., Inc. v. Bryant, 702

- 15 -

F.3d 232, 238 (5th Cir. 2012) (describing a Senate Report accompanying the federal "Truth in Caller ID Act," which "noted spoofing's legitimate importance for domestic-violence victims, or for consumers who wish to provide a temporary call-back number that differs from their actual telephone number" and which characterized the "federal effort to curtail spoofing" as focused more narrowly "on persons intending to cause harm through fraud or criminal mischief").

Alternatively, Walsh may mean to argue that TelTech's promotion of SpoofCard's illegitimate uses demonstrates that TelTech proximately caused Walsh's injuries by not only offering the service but also by promoting the service as it did, regardless of whether Johnienne saw the promotional material that TelTech set forth. In other words, Walsh appears to contend that the promotional material shows that Johnienne's actions were reasonably foreseeable to TelTech even if that material did not cause Johnienne to take action.

To the extent that is Walsh's contention, we agree with the District Court that Walsh has not met her burden of establishing proximate causation. The promotional material to which Walsh alludes involved references to both illegitimate and legitimate uses of the SpoofCard service, and TelTech did set forth the following terms of service to purchasers:

> You agree to use the SpoofCard.com services only for purposes that are lawful in the jurisdictions where you are calling from and calling to.  You shall not transmit any unlawful, harmful, threatening, abusive, harassing, defamatory, vulgar, obscene, sexually explicit, . . . or otherwise objectionable material of any kind, including but not limited to any material that . . . violates any applicable local, state, national, or international law.

Against that background, Walsh points to no state law authority to support the novel proposition that Chapter 93A's proximate causation requirement may be satisfied even absent any connection between Johnienne's actions and TelTech's promotional material, which was of a limited nature.  See Velleca, Jr. v. Uniroyal Tire Co., Inc., 630 N.E.2d 297, 299 (Mass. App. Ct. 1994) (holding that the defendant was not liable for plaintiff's injuries under Chapter 93A because it was the plaintiff's misuse of defendant's product that was "the sole cause" of plaintiff's injuries).  We thus reject this ground for reversal as well.  See S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91 (1st Cir. 2014) (noting that plaintiffs, "having chosen a federal forum to seek relief that depends at least in part on the meaning of state law, should not 'expect the federal court to steer state law into unprecedented configurations'" (quoting Santiago v. Sherwin Williams Co., 3 F.3d 546, 549 (1st Cir. 1993))); Baker, 771 F.3d at 52 ("If the standard for ch. 93A liability requires clarification, the SJC can provide it in an appropriate case." (citing Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391,

- 17 -

402 (1st Cir. 2005) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law.")).

## IV.

Walsh was the victim of something far worse than a prank, and she was victimized by use of a service that facilitated such awful conduct. But the District Court properly ruled that, on this record, the provider of that service was entitled to summary judgment on her state law claim.

Accordingly, we **affirm**.