# United States Court of Appeals
## For the First Circuit

No. 23-1291

A. RICHARD SCHUSTER, individually and on behalf of all others
similarly situated,

Plaintiff, Appellant,

ROBERT RANSON,

Plaintiff,

v.

WYNN MA, LLC; WYNN RESORTS, LTD; WYNN RESORTS HOLDINGS, LLC,

Defendants, Appellees,

MA GAMING COMMISSION and EDWARD R. BEDROSIAN, JR.,

Interested Parties.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Montecalvo, Lynch, and Rikelman,
Circuit Judges.

Joshua N. Garick, with whom Law Offices of Joshua N. Garick
P.C., David Pastor, and Pastor Law Office, LLP were on brief, for
appellant.
Wayne F. Dennison, with whom Joshua P. Dunn and Brown Rudnick
LLP were on brief, for appellees.

September 23, 2024

**MONTECALVO, Circuit Judge**.    A.  Richard  Schuster challenges the practice by which the Defendant-Appellees Wynn MA, LLC,  Wynn  Resorts,  Ltd.,  and  Wynn  Resorts  Holdings,  LLC (collectively "Wynn")  redeem slot-machine tickets at Encore Boston Harbor Casino ("Encore").   He brings claims for unjust enrichment, unfair and deceptive business practices pursuant to section 2 of Massachusetts  General  Laws  Chapter  93A,  breach  of  contract, promissory  estoppel,  and  conversion.    He  appeals  the  district court's dismissal of his unjust enrichment claim and its grant of summary judgment in favor of Wynn on his remaining claims.   For the following reasons, we affirm.

## I. Background[1]

Wynn  owns  and  operates  Encore,  a  casino  in  Everett, Massachusetts.   At Encore, when a patron is finished using a slot machine,  they  press  the  "cashout"  button  and  the  slot  machine dispenses a ticket, known as a "TITO ticket,"[2] that reflects the value of the patron's money at the moment they finish gaming.   The patron  can  then  insert  the  TITO  ticket  into  a  different  slot machine to continue gaming or redeem it.   The redemption process is the heart of this dispute.

---

[1] "On review of an order granting summary judgment, we recite the facts in the light most favorable to the nonmoving party." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157-58 (1st Cir. 2016) (quoting Commodity Futures Trading Comm'n v. JBW Cap., 812 F.3d 98, 101 (1st Cir. 2016)).

[2] "TITO" is an industry acronym for "ticket in, ticket out."

There are two possible paths toward redemption for the patron. The first option is to take the TITO ticket to one of two cashier cages at Encore where an employee will provide dollars and coins equal to the full value of the TITO ticket. The second option is to redeem the TITO ticket at one of the twenty-eight self-serve kiosks known as ticket redemption units ("TRUs") that are placed throughout the casino. When Encore first opened, the TRUs dispensed both dollars and coins when redeeming TITO tickets. But, within a few days, Wynn decided to make the TRUs coinless, meaning that when a patron used a TRU, it only dispensed bills for the value of a TITO ticket followed by a "TRU ticket" for any remaining value in cents. The patron could then redeem the TRU ticket at the cashier cage, insert it into a slot machine (which will accept the TRU ticket even though it does not accept physical coins), or simply discard the ticket.[3]

Schuster argues that this ticket redemption practice violates Encore's internal controls and Massachusetts gaming regulations and is therefore an unfair or deceptive act in violation of Massachusetts' consumer protection statute. See 205

---

[3] Below, the parties disputed the language on the TRU ticket. But the TRUs' Operator Guide from its manufacturer, part of the record here, includes an example of a ticket labeled "Kiosk Receipt" that will be printed in the event the TRU does not dispense the full cash value of the TITO ticket. The "Kiosk Receipt" displays the "[a]mount [r]emaining" owed to the patron and instructs the patron to "[p]lease take receipt to cashier."

- 4 -

Mass. Code Regs. § 138.02(7) ("[T]he gaming licensee shall implement and abide by its system of internal controls."); Mass. Gen. Laws ch. 93A, § 2. As required by Massachusetts regulations, Wynn submitted Encore's internal controls to the Massachusetts Gaming Commission ("MGC")[4] for approval prior to opening Encore. See 205 Mass. Code Regs. § 138.02(1) (2023). Under the relevant regulations, the internal controls were required to "include provisions governing a computerized gaming voucher system for the redemption of gaming vouchers that comports with 205 [Mass. Code Regs. §] 143.00: Gaming Devices and Electronic Gaming Equipment." 205 Mass. Code Regs. § 138.51 (2023). Regulation 143.00 in turn specifies that a gaming licensee, like Wynn, must comply with industry standards set in the GLI-20 by Gaming Laboratories International, LLC, as they are incorporated into and modified by Massachusetts gaming regulations.[5] 205 Mass. Code Regs. § 143.07 (2022).

---

[4] MGC is the "principal entity charged with implementing the provisions of the [Massachusetts Gaming Act]" and its accompanying regulations. KG Urb. Enters., LLC v. Patrick, 693 F.3d 1, 4 (1st Cir. 2012) (citing Mass. Gen. Laws ch. 23K, § 3(a) (2014)).

[5] The current regulations require a licensee to comply with the standard set in the GLI-20 (version 2.0), which was released May 14, 2019. 205 Mass. Code Regs. § 143.07(1) (2022). However, the GLI-20 (version 1.5) was the controlling standard from September 6, 2011, up until December 8, 2022. 205 Mass. Code Regs. § 143.07 (2014). As we will discuss later, one of Schuster's arguments hinges on whether Encore's coinless practice violates the GLI-20. The parties dispute whether the updated GLI-20 (version 2.0) permits the coinless practice. However, as they

- 5 -

The GLI-20 contains a section on kiosk "Ticket/Voucher/Coupon Redemption." The language at the relevant time stated, among other things, that "[w]hen using a Kiosk as the method of redemption [of a valid slot-machine ticket], . . . [t]he system [must] . . . transmit to the Kiosk the amount to be paid or instruct the kiosk to reject the ticket/voucher." When the kiosk pays out a ticket, the "payment is made [by dispensing] various denominations[ of] coin and currency." However, "[i]f the Kiosk has a printer that is used to make payments, the kiosk may pay the player by issuing a printed ticket/voucher."

Encore's internal controls duly outlined the casino's use of TRUs. The internal controls noted that each machine was manufactured to have three coin hoppers to distribute three denominations of coins. The internal controls explained that when a patron inserts a valid gaming voucher, "the TRU [would] dispense[] to the patron the appropriate amount of funds and the gaming voucher [would be] electronically noted 'redeemed' in [Encore's] system."

Schuster first visited Encore on July 11, 2019, and gamed at multiple slot machines. He redeemed TITO tickets at multiple TRUs and "received cash to the nearest dollar" and TRU tickets for

agree the GLI-20 (version 1.5) was in effect during the relevant period, we limit our analysis accordingly.

- 6 -

the remaining coins. He inserted some of his TRU tickets into slot machines to continue gaming and discarded others.

On July 15, 2019, Schuster filed a class action lawsuit against Wynn in Massachusetts state court. He alleged that Wynn was "stealing money" from patrons because TRUs did not dispense coins.[6] That same day, the Massachusetts Investigations and Enforcement Bureau ("IEB") learned of Schuster's pending lawsuit and began an investigation.[7] As a result of the IEB's involvement, Wynn placed a sign on each TRU stating: "Machine only dispenses cash, ticket will print for change. Please take ticket to the cashier to redeem." Wynn sent a photo of the sign to IEB investigators, one of whom responded, saying that the sign "[l]ooks acceptable." In its report to the MGC, the IEB noted the addition of this signage and the IEB's understanding that any unclaimed cash would be "deposited into the Commonwealth's Gaming Revenue Fund." Additionally, IEB Gaming Agent Keven Depina noted in an email that the "IEB did not find any discrepancies while conducting a line-by-line comparison between the [gaming] regulation[s] and Encore['s internal controls]."

---

[6] Schuster also brought claims regarding Encore's blackjack odds, which are no longer at issue.

[7] The Massachusetts Gaming Act created the IEB and vested in it the powers of a law enforcement agency "necessary to effectuate the purposes" of the Gaming Act. Mass. Gen. Laws ch. 23K, § 6(b) (2011). The IEB's responsibilities include "investigat[ing] any suspected violations of" the Gaming Act. Id.

On July 18, 2019, the MGC held a public meeting during which its representatives discussed Encore's coinless TRU practice. Encore's then-president, Robert DeSalvio, stated that Encore implemented the coinless practice because when the TRUs ran out of coins they went "into a tilt" and patrons seeking to redeem their TITO tickets would have to wait until the TRU was refilled, rebalanced, and back in service.[8] The IEB Assistant Director, Bruce Band, explained that the IEB initially believed notice of the coinless TRU practice "was not posted clearly enough" to inform patrons but that Encore had addressed this issue by adding the signage on the TRU machines. Band further explained that any TRU tickets that were not redeemed within a year would constitute unclaimed cash pursuant to Massachusetts General Laws Chapter 23K, § 53 (2011), meaning that the value of the unclaimed cash would be deposited into the Commonwealth's Gaming Revenue Fund.[9]

---

[8] Throughout the course of this litigation, Wynn has offered other reasons for the coinless TRU practice. In a supplemental response to an interrogatory, Wynn maintained that "[i]n the days and weeks after the grand opening, the TRUs experienced frequent coin jams and . . . malfunctions," and Wynn employees later testified that the change was in response to customer complaints about the TRUs.

[9] Under Massachusetts gaming regulations, a gaming licensee's internal controls are required to "include provisions governing . . . unclaimed cash and prizes" that, at a minimum, must include the transfer of funds to the Gaming Revenue Fund if they are not claimed within a year, in accordance with Massachusetts General Laws Chapter 23K, §§ 53, 59. 205 Mass. Code Regs. § 138.68(1).

During the meeting, the MGC representatives expressed concern over the prospect that money would "erroneously [go] to the Commonwealth fund" because patrons would be frustrated by the redemption. The MGC suggested that Encore add signage about the coinless practice throughout the casino and have some TRUs dispense coins. In response, Wynn placed two TRUs dispensing coins closest to the cashier cage on the first floor. Wynn also added a digital display to the remaining TRUs, notifying patrons that the TRU did not dispense coins with the following message: "This Ticket Redemption Machine will pay out in cash. Tickets will print for change and can be redeemed at the cashier." However, Wynn did not add any signage on the slot machines or throughout Encore's casino floor. Schuster continued to visit Encore after filing this lawsuit, and -- when dispensed TRU tickets during his visits -- he would "either put [his TRU ticket] in another slot machine, usually one near the TRUs, or [he] would [] discard[] it."

## II. Procedural History

In his initial state-court complaint, Schuster brought four common law claims: breach of contract, promissory estoppel, conversion, and unjust enrichment. After Wynn removed the case to federal court, Schuster amended his complaint, adding a claim for unfair and deceptive business practices under Massachusetts General Laws Chapter 93A, § 2. The district court granted Wynn's motion to dismiss Schuster's unjust enrichment claim. The district

court found that Schuster's pursuit of equitable relief under the unjust enrichment claim failed as a matter of law because Schuster had an adequate remedy at law, via the Chapter 93A claims. The court later granted Wynn's motion for summary judgment on all remaining claims and simultaneously denied Schuster's motion for class certification as moot. In doing so, the district court determined that, even viewing the facts in the light most favorable to Schuster, the record did not present any basis for him to prevail on his arguments that the coinless practice was unfair or deceptive. Additionally, the court concluded that Schuster could not establish that the coinless practice was a violation of a contract or other promise or amounted to an unlawful conversion. Schuster filed this timely appeal challenging the district court's dismissal of his unjust enrichment claim at the pleadings stage and grant of summary judgment on his remaining claims.

### III. Discussion

"As a federal court sitting in diversity, we apply the substantive law of Massachusetts, as articulated by the [Massachusetts Supreme Judicial Court] [('SJC')]." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 70 (1st Cir. 2020) (first alteration in original) (quoting Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017)). Where the SJC "has not spoken directly on the question at issue, we must predict, as best we can, that court's

likely answer." Id. (quoting Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011)).

## A. Unjust Enrichment

We begin by addressing Schuster's unjust enrichment claim, which is the only dispute related to the earlier motion to dismiss and can be easily disposed of. We review the district court's dismissal of this claim de novo. Efron v. UBS Fin. Servs. Inc. of P.R., 96 F.4th 430, 437 (1st Cir. 2024) (quoting Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012)). The district court dismissed this claim because Schuster had an adequate remedy at law under Chapter 93A. We agree with the district court.

As unjust enrichment is an equitable remedy, under Massachusetts law, a plaintiff's claim is properly dismissed when there is an adequate legal remedy available. Tomasella, 962 F.3d at 82-83; see also ARE-Tech Square, LLC v. Galenea Corp., 79 N.E.3d 1111 (Mass. App. Ct. 2017). We have previously held that Chapter 93A provides an adequate legal remedy for similar unjust enrichment claims. See Tomasella, 962 F.3d at 83-84; Shaulis, 865 F.3d at 16. Here, Schuster's unjust enrichment claim seeks to redress the same injury as that alleged under Chapter 93A, and, therefore, the claim was properly dismissed. Further, the likelihood of success under this Chapter 93A claim is irrelevant, as "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." See Tomasella, 962

- 11 -

F.3d at 82-83 (alteration in original) (emphases added) (quoting Shaulis, 865 F.3d at 16).

## B. Schuster's Remaining Claims

Schuster next challenges the district court's grant of summary judgment on his claims against Wynn for (1) violation of Chapter 93A and (2) breach of contract, promissory estoppel, and conversion. Schuster's appeal is unsuccessful on all claims.

### 1. Standard of Review

This court reviews the district court's grant of summary judgment de novo. Penobscot Nation v. Frey, 3 F.4th 484, 490 (1st Cir. 2021), cert. denied sub nom. United States v. Frey, 142 S. Ct. 1668 (2022), and cert. denied, 142 S. Ct. 1669 (2022). We construe the record "in the light most congenial to the nonmovant" and will affirm the district court's grant of summary judgment if there is "no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017).

### 2. Schuster's Chapter 93A Claims

Schuster asserts that Encore's coinless practice is both unfair and deceptive under Chapter 93A. Chapter 93A, Massachusetts' consumer protection statute, is broadly written. Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (citing Mass. Gen. Laws ch. 93A, § 2). The legislature utilized "open-ended" language like "unfair" and "deceptive" with the

intention of "allow[ing] for the regulation [by the Attorney General] of future, as-yet-undevised, business practices." Robinhood Fin. LLC v. Sec'y of Commonwealth, 214 N.E.3d 1058, 1070 (Mass. 2023) (second alteration in original) (quoting Purity Supreme, Inc. v. Att'y Gen., 407 N.E.2d 297, 303 (Mass. 1980)).

To receive relief under Chapter 93A, a plaintiff "must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Walsh, 821 F.3d at 160 (quoting Mass. Gen. Laws ch. 93A, § 2). Additionally, the plaintiff must establish causation, meaning the plaintiff must "prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." Id. (citing Rhodes v. A.I.G. Domestic Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012)).

In establishing an "unfair or deceptive act or practice," it is "neither necessary nor sufficient that a particular act or practice violate common or statutory law." Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 16 (1st Cir. 2021) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009)). While the question of "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a 93A violation is a question of law." Id. at 15 (quoting Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007)).

## a. Alleged Unfair Practice

The text of Chapter 93A does not provide a definition of "unfair or deceptive acts or practices," but the SJC has identified several factors for courts to use in determining whether an act or practice is unfair. See Mass. Gen. Laws ch. 93A, §§ 1, 2; Columbia Plaza Assocs. v. Ne. Univ., 227 N.E.3d 999, 1017 (Mass. 2024). The court considers whether the conduct: (1) "is within at least the penumbra of some common-law, statutory, or other established concept of unfairness"; (2) "is immoral, unethical, oppressive, or unscrupulous"; and (3) "causes substantial injury to consumers or other businesses." Columbia Plaza Assocs., 227 N.E.3d at 1017 (citation omitted).

Schuster argues "this [practice of not dispensing coins directly from the TRUs] is unfair because it is contrary to [Encore's] own [i]nternal [c]ontrols, various other legal authorities, and is otherwise immoral, unethical, oppressive[,] and unscrupulous."[10]   He also contends that Wynn's shifting

---

[10] Schuster also argues that the TRUs' failure to dispense coins amounts to "a return, refund or cancellation issue" under Chapter 93A and a violation of Encore's internal controls. See 940 Mass. Code Regs. § 3.13(4) ("It is an unfair practice" to: "fail to clearly and conspicuously disclose to a buyer, prior to the consummation of a transaction, the exact nature and extent of the seller's refund, return, or cancellation policy"; "misrepresent the nature and terms of the seller's refund, return, or cancellation policy"; or "fail to perform any promises made to a buyer in connection with the refund, return, or cancellation privileges."). We agree with Wynn's contention that this argument was forfeited below because Schuster did not squarely raise it

rationale for the coinless practice demonstrates unfairness.[11]

Wynn disputes each of these arguments.[12]

### i. Internal Controls and Regulations

We begin with Schuster's three-part argument: that the coinless practice violates Encore's internal controls; that this in turn violates Massachusetts gaming regulations; and, from both of these, Encore has violated Chapter 93A. Without accepting Schuster's premise underlying step 3, we reject the argument at

---

before the district court. An argument that was not preserved below typically cannot be raised on appeal; at best we will review an unpreserved argument for plain error. United States v. Benjamin-Hernandez, 49 F.4th 580, 584 (1st Cir. 2022). However, because Schuster's "brief fails to even mention plain error, let alone argue for its application here," the argument is waived and will not be considered. Id. at 585.

[11] Schuster also claims the district court's decision is erroneous because the court improperly acted in a "novel 'legal gatekeeper'" role while granting summary judgment on his Chapter 93A claim. But the SJC has ruled that the boundaries of liability under Chapter 93A are issues of law for the judge to determine. See Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008). The normal rules of civil procedure apply, including both Rules 12(b)(6) and 56. At summary judgment, the issue for the court is whether the plaintiff has produced sufficient facts to create a material issue of fact in support of a claim within those boundaries. Fed. R. Civ. P. 56; see, e.g., Zielinski v. Citizens Bank, N.A., 552 F. Supp. 3d 60, 72 (D. Mass. 2021) (concluding that plaintiff did "not create[] a genuine dispute of material fact that the entirety of [defendant's] conduct was unfair or deceptive"). Accordingly, Schuster's argument fails.

[12] Additionally, Wynn contends that we can affirm the district court's decision on other grounds. Namely, Wynn argues that the MGC approved the coinless practice and Schuster has failed to establish the necessary causation element of his Chapter 93A claim. We need not reach these arguments.

steps 1 and 2. Encore is required to comply with its internal controls, which in turn must conform to Massachusetts regulations and the industry standards set by the GLI-20, as they are incorporated into Massachusetts law. See 205 Mass. Code Regs. §§ 138.51, 143.07. Schuster argues that the coinless practice does not comply with the appropriate standards. Specifically, he points to Encore's internal controls, which demand that TRUs pay patrons the "appropriate amount of funds" when they redeem a TITO ticket. In his view, this requires the disbursement of dollars and coins that equal the full value of the ticket. He similarly maintains that the GLI-20's standard for kiosk redemption does not allow Encore to implement its coinless practice because the GLI-20 requires the TRUs to dispense cash and coins.

Wynn argues the coinless practice complies with the relevant internal controls and regulations. Specifically, Wynn argues that the term "funds" as set out in Encore's internal controls is not limited to dollars and coins, as Schuster suggests, but encompasses "currency, a gaming voucher, or a coupon." (Quoting 205 Code Mass. Regs. § 138.33(7)). Additionally, Wynn maintains that the applicable GLI standard allows TRUs to pay patrons "in whole or in part with a voucher or ticket."

We agree with the district court that Schuster's argument on this issue is "fatally flawed." Schuster v. Wynn Resorts Holdings, LLC, No. 19-11679, 2023 WL 2248886, at *6 (D.

- 16 -

Mass. Feb. 27, 2023). Under Encore's internal controls, TRUs must dispense the "appropriate amount of funds" when redeeming a ticket. The parties' dispute on this issue comes down to a simple question: Is the term "funds" limited to cash and coin currency? We answer that question in the negative.

Encore is bound to its internal controls to dispense the "appropriate amount of funds" under 205 Code Mass. Regs. § 138.02(7). The plain language of the relevant regulations contemplates a TRU redemption system that includes gaming vouchers. See 205 Mass. Code Regs. § 138.01; DeCosmo v. Blue Tarp Redevelopment, LLC, 169 N.E.3d 510, 516 (Mass. 2021) (interpreting Massachusetts gaming regulations by giving the language "its plain meaning" (quoting Boss v. Leverett, 142 N.E.3d 1113, 1118 (Mass. 2020))). While the relevant regulations do not explicitly define "funds," they define "unsecured funds" as "currency, a gaming voucher, or a coupon" that is "found inside a slot machine but outside of the slot drop box during the collection of slot drop boxes." 205 Mass. Code Regs. § 138.33(7) (emphases added); see also 205 Mass. Code Regs. § 138.01. Because the definition of unsecured funds encompasses gaming vouchers and coupons, we reject Schuster's argument that "funds" must be defined only as "[c]ash mean[ing] currency or coin." 205 Mass. Code Regs. § 138.01 (emphasis omitted). Thus, Encore's definition of "funds" as including a voucher or a ticket does not violate the Massachusetts

- 17 -

regulations.  See 205 Mass. Code Regs. § 138.33(7).  And Encore's internal controls do not mandate that the TRUs pay out patrons using only cash and coins as Schuster suggests.

Our understanding that the phrase "appropriate amount of funds" includes more than just cash and coins is further supported by language in the GLI-20, as it was incorporated into law by 205 Mass. Code Regs. § 143.07.  Despite Schuster's insistence to the contrary, the GLI-20's standards for redemption kiosks, such as TRUs, "does not require [them to] . . . dispense both cash and coin."  Schuster, 2023 WL 2248886, at *6.  The GLI-20 (version 1.5) provides that "kiosk[s] may pay the player by issuing a printed ticket/voucher."[13]  The GLI-20 permits kiosks to print "[t]icket[s]/vouchers that reflect partial credits," and allows such "ticket[s]/voucher[s]" to be "redeemed at a gaming device, cashiers cage or [another] kiosk," at which point "the system must change the 'Pending' status of the ticket/voucher to 'Redeemed.'"

Thus, reading Encore's use of "funds" in its internal controls in conjunction with the language in the regulations

_____

[13] Schuster concedes the GLI-20 language permits use of vouchers to "cover [] some transactions," but argues the language does not permit a TRU to issue partial vouchers for coins as a default.  However, the version of the GLI-20 we are focused on does not specify that its language allowing kiosks to "pay the player by issuing a printed ticket/voucher" is limited only to situations where the TRU malfunctions or runs out of coins as Schuster suggests.  And Schuster has provided no other support for his contention.

- 18 -

permitting gaming vouchers, "it is apparent that a TRU can dispense 'the appropriate amount of funds' by dispensing cash and a TRU ticket that can be redeemed at a cashier window or used for further gaming."  Schuster, 2023 WL 2248886, at *7.

However, the fact that the coinless practice does not violate Encore's internal controls or the relevant regulations does not end our analysis.  See Anoush Cab, Inc., 8 F.4th at 16-17 (citations omitted) ("[C]onduct that does not violate statute or common law is not necessarily exempt from liability under Chapter 93A.").

### ii. Unintended Gaming

Schuster argues the coinless practice is "immoral, unethical, oppressive, or unscrupulous" because it "was designed to encourage undesirable slot play."[14]  He maintains that the

_____

[14] Schuster has waived his argument that the coinless practice violates Massachusetts General Laws Chapter 23K, § 1(8), which provides that "gaming licensees shall demonstrate their commitment to efforts to combat compulsive gambling . . . and shall recognize that the privilege of licensure bears a responsibility to identify, address and minimize any potential negative consequences of their business operations."  Wynn is correct that this argument, specifically the reliance on Massachusetts General Laws Chapter 23K, § 1(8), was not properly raised before the district court.  In general, an argument is only preserved for appellate review if the party raised it squarely before the trial court. See Johnson v. Johnson, 23 F.4th 136, 143 (1st Cir. 2022). Schuster argued below that Wynn was wrongly retaining funds and failing to fully redeem TITO tickets in violation of Massachusetts General Laws Chapter 23K, § 53, and Encore's internal controls. He never raised the contention that the practice was unfair because Wynn was not fulfilling its responsibility as a licensee under Massachusetts General Laws Chapter 23K, § 1(8), or other laws on

- 19 -

practice allows Wynn to "keep money that the player" otherwise would have pocketed. He argues that the coinless practice influenced patrons "to take an action that was disadvantageous": because patrons could not easily redeem the entirety of their tickets at the TRUs, they discarded the tickets or used them in slot machines.

"The[] traditional formulations of the [unfairness] standard for 93A liability are notably imprecise." Com. Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000). The SJC has explained that in evaluating conduct the focus should be "on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a . . . 93A fairness determination." Id. (quoting Mass. Employers Ins. Exch. v. Propac-Mass, Inc., 648 N.E.2d 435, 438 (Mass. 1995)). Additionally, we "evaluate the equities between the parties," the "plaintiff's conduct," and "[w]hat a defendant knew or [reasonably] should have known." Incase Inc., 488 F.3d at 57 (quoting Swanson v. Bankers Life Co., 450 N.E.2d 577, 580 (Mass. 1983)).

We read Schuster's argument as taking issue with the adequacy of the notice patrons received that the TRUs were coinless

responsible gaming. Schuster has also waived the argument that we should review this unpreserved argument for plain error. See Benjamin-Hernandez, 49 F.4th at 584-85.

and, separately, as arguing the coinless practice itself, and the burden it imposes on patrons to retrieve their coins, is inherently unfair. With regard to notice, he contends Wynn "g[ave] misleading information," specifically by providing "signage on TRUs claiming this is where to go for 'Ticket Redemption.'" We do not agree that it is misleading to label the TRUs as "Ticket Redemption." As we have previously discussed, it was permissible for Encore to partially redeem a TITO ticket with a voucher.

Turning to whether the coinless practice itself is unfair, Wynn has offered several rationales for implementing its coinless practice centered around issues with the TRUs going out of service and causing patron dissatisfaction. Schuster disputes that coin jams and resulting customer dissatisfaction were the basis of the coinless practice. He argues that beyond the statements of Encore employees, there is nothing in the record documenting that an excessive number of coin jams or customer complaints occurred.

Schuster argues that this practice's effect is that Wynn converts coins, which cannot be wagered, "into something that can only be used to gamble at Encore," and Schuster maintains that a "[TRU] ticket [in the amount of less than one dollar] is in an amount less than a slot machine's minimum wager," such that a patron would need to spend more money to continue playing. Schuster presents statistics showing that "over 70%" of customers

used their TRU tickets to engage in further gaming. And he argues that that further gaming was unintended or undesired. But there is no genuine dispute that Schuster and Encore's other patrons knew or should have known that they could redeem their TRU tickets for their full value, rather than continue gaming.

While we recognize that Schuster has pointed out several issues with the coinless practice, we agree with the district court "that the record provides no basis to permit [him] to prevail on this argument." Schuster, 2023 WL 2248886, at *7. He has not demonstrated how requiring patrons to go to a cashier cage to redeem coins is unfair under Chapter 93A. While it may be inconvenient to take this additional step, the record does not show that the practice of requiring customers to walk to a cashier cage and potentially wait in line is immoral, unethical, oppressive, or unscrupulous. See Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015) ("[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." (alteration in original) (quoting Carmona v. Toledo, 215 F.3d 124, 133 (1st Cir. 2000))). Thus, Schuster has not demonstrated that the coinless practice is unfair under Chapter 93A.

## b. Alleged Deceptive Practice

We turn to Schuster's contention that the coinless practice is deceptive. Under Chapter 93A, a "practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way [they] otherwise would have acted.'" Walsh, 821 F.3d at 160 (quoting Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 486-87 (Mass. 2004)). However, conduct does not amount to a deceptive act under Chapter 93A "by virtue of the mere fact that the conduct affects a person's actions in a way that eventually causes that person harm." Baker v. Goldman, Sachs & Co., 771 F.3d 37, 54 (1st Cir. 2014). "In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public.'" Aspinall, 813 N.E.2d at 487 (quoting Leardi v. Brown, 474 N.E.2d 1094, 1099 (Mass. 1985)). An actionable deceptive act could include an affirmative misrepresentation or an omission. Tomasella, 962 F.3d at 72. An omission is a "failure to 'disclose to another a fact that [one] knows may justifiably induce the other to act or refrain from acting in a business transaction . . . [if one] is under a duty to the other to exercise reasonable care to disclose the matter in question.'" Id. at 71-72

(alteration in original) (quoting Underwood v. Risman, 605 N.E.2d 832, 836 (Mass. 1993)).

Schuster argues that the coinless practice is deceptive because Wynn failed to provide notice to patrons that the TRUs were coinless. Schuster also argues that, as a result of that omission, patrons did not receive the full value of TITO tickets. Schuster points out that for the first several days of the practice there was no notice to patrons that the TRUs no longer dispensed coins and argues Wynn's use of "makeshift signage" did not remedy the issue. He also notes that, even after the MGC's recommendation to do so, Wynn did not post signs on the slot machines that the TRUs were coinless; the patrons, therefore, did not have notice of the coinless practice before they began gaming. Finally, he takes issue with Encore labeling the TRUs as a means of "ticket redemption" and asserts that the label is deceptive because the TRUs only partially redeem a TITO ticket and Encore does not notify the patrons of this practice.

In response, Wynn argues that it gave patrons notice of the coinless practice with signage and display screen messages on the TRUs. Wynn also points out that even after Schuster knew of the coinless practice and how to redeem his TRU ticket to receive coins, Schuster never attempted to redeem his tickets at the cashier cage.

- 24 -

Even on our de novo review, we agree with the district court that this claim cannot survive summary judgment. Schuster's argument relies on his understanding that redemption of a TITO ticket can only lawfully be done through the distribution of the cash and coins that reflects the full value of the inserted ticket. But as we discussed previously, a TRU can redeem a TITO ticket with the "appropriate amount of funds" by dispensing dollars and a TRU ticket that can be redeemed in lieu of coins. Thus, labeling a coinless TRU as a means of "ticket redemption" is not inherently deceptive.

### 3. Schuster's Common Law Claims[15]

On his breach of contract and promissory estoppel claims, Schuster first argues that Encore's internal controls amount to "a contractual obligation or promise to dispense coins." He also claims that the "historical practices" of slot machines create an implied contract. Under Massachusetts law, a breach of contract claim requires the plaintiff to prove that "a valid, binding contract existed, the defendant breached the terms of the contract, and [the plaintiff] sustained damages as a result." Gattineri v. Wynn MA, LLC, 63 F.4th 71, 85 (1st Cir. 2023) (quoting

---

[15] Schuster also argues that his common law claims of breach of contract, promissory estoppel, and conversion all survive because they are "derivative[s] of the Chapter 93A cause of action." As noted above, Schuster's Chapter 93A claim fails, and thus his derivative argument is unsuccessful.

Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007)), certified question answered, 221 N.E.3d 742 (Mass. 2023). One element of a successful promissory estoppel claim is that the "promisor [made] a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (citation omitted).

The district court rejected Schuster's argument that, in labeling the TRUs as a place where a patron could redeem their slot tickets, Wynn promised patrons that using the TRU would allow the patron to receive the entire cash value of the ticket from the TRU. Schuster, 2023 WL 2248886, at *9. The district court reasoned that the breach of contract and promissory estoppel claims failed because "[w]hile [Schuster] might view [the coinless practice] as overly burdensome, there is no evidence that [Wynn] promised a more efficient process." Id. We agree. Schuster cannot successfully demonstrate that a reasonable jury could conclude that Wynn made a contract or promise that Schuster could rely on to establish a breach of contract or promissory estoppel claim. See Burt v. Bd. of Trs. of Univ. of R.I., 84 F.4th 42, 59 (1st Cir. 2023) ("Even though the nonmovant enjoys a favorable presumption for the evidence it adduces, it still must point to

evidence that a reasonable factfinder could employ to its behoof."). As a result, these claims fail.

Lastly, on his conversion claim, Schuster argues that Wynn's actions amount to conversion because the TRUs failed to dispense coins and Wynn allegedly "retained the coins rather than paying them out." A successful conversion claim under Massachusetts law requires, among other things, a showing that the "defendant . . . intentionally and wrongfully exercised control or dominion over another's personal property." Foss v. Marvic Inc., 994 F.3d 57, 65 (1st Cir. 2021). The district court correctly concluded that the undisputed facts showed that, when redeeming TITO tickets at a TRU, a patron would receive "cash up to the nearest whole-dollar value of the [TITO] ticket" and a TRU ticket for the "value of the [remainder of the TITO] ticket, which was less than $1." Schuster, 2023 WL 2248886, at *9. The court reasoned that because the TRU ticket "could be redeemed at a cashier window or be used to continue playing on a slot machine[, the practice of dispensing a TRU ticket could not] be reasonably construed as a refusal to pay [Schuster] what he was owed." Id. We agree. Schuster had the ability to redeem the TRU ticket for coins or use the ticket in further gambling, which he did on at least one occasion. While Schuster had to engage in an extra step to access his coins, a reasonable jury could not find that Wynn exercised control or dominion of Schuster's funds.

## IV. Conclusion

For the reasons above, we **affirm** the district court's decision dismissing Schuster's unjust enrichment claim and granting summary judgment in favor of Wynn on Schuster's remaining claims.